The first case for argument this morning is Global Material Technologies v. Dahzeng Metal Fibre Co., No. 183117. We'll hear first from Mr. Matthews for the defense. Good morning, Your Honor. Your Honor, the facts of the case have been described by two different judges, but I think it's important to summarize that in the complaint in particular, these parties have had a relationship over a decade, approximately 15 years. And at that time, between the parties, there was no indication of a written agreement with respect to how they were to operate on the trade secrets. Mr. Matthews, before we get too far down the facts alleged in the complaint, can you please address the question of whether or not there's a final judgment here? The Seventh Circuit had issued an order in advance of this case for both sides to address it. I did not see it addressed in either your opening or your reply brief. And of course, we have to have jurisdiction before we can delve into everything. The specific question is on your counterclaims. You had received a favorable ruling on your counterclaims, but there was no final judgment entered on those. So how is there a final judgment, or do you think there was a final judgment on those? Yes, Your Honor. Your Honor, the court issued that order and requested that we file a position indicating the basis for the jurisdiction, and we submitted that to the court. And of course, it was addressed in the pleadings. But it's a matter of jurisdiction. We're not questioning whether or not the district court had subject matter jurisdiction. The question is, was there a final appealable order for this court to address when the final judgment order did not address the counterclaims? I fully understand the court's question. And that issue, Your Honor, we did address in a pleading file with the court, in which we have pointed out that the district court stated that this case was final and indicated in the order that the case was closed. What about the fact that in the final judgment order, your counterclaims were not covered? We do agree, Your Honor, that the district court should have issued this order that the case was closed. We had no opportunity to then go back and petition the court that, in fact, we disagreed with this decision. The only method was to appeal. Is it your position, Mr. Matthews, that the final judgment order should have addressed the counterclaims? We think it should have, Your Honor, to be quite frank. You're not abandoning those, are you? We did not at, we elected in the appeal to go ahead with the appeal on the other issues, given the fact that the court had affirmatively not addressed it and issued an order stating that this case was closed. That was addressed in the appellant's response as well. You intend to have the default judgment order functionally kind of set it off? In other words, I'm trying to get at what, Judge, you're not walking away from the counterclaim and giving it up? No, Your Honor. I thought you were. You just told us you're not appealing them. You're saying it's over. The case is over in the district court. What's left? Your Honor, I was saying that the district court said it was over. Right. And from our point of view... Did you argue the counterclaims in your blue brief? In the appellant brief, we did not argue the counterclaim because we elected, Your Honor, to focus on the issue of the underlying merits of the case. You have not asked this court to revive your counterclaims, have you? We did not, Your Honor. Okay. So, and that is correct. We did not ask the court to revive the counterclaim or to send it back to the district court on that basis. What we did argue is that the complaint in this case should be scrutinized to determine that the oral agreement, which Judge Zhao has found, stated that from the plainest point of view, GMT only stated that the explicit understanding is that DNC would not provide the trade secret information to third parties. And in this case, the only parties that were privy to the trade secret under all of the rulings were its subsidiaries. Mr. Matthews, I'm baffled by your brief, I have to say, in that you seem to want to argue the merits of a case in which your clients were sanctioned with the default judgment for discovery abuses and deception of the right. Either the default judgment or the money judgment against them. This is really about an attempt to save Mr. Dong from personal liability, right? We believe that that is correct, Your Honor. Okay. So, you've cited a lot of cases about default judgments that are entered under Rule 55 when somebody, when a defendant blows an answer deadline, for example, and the courts are generally pretty, there's a lot of flexibility in that kind of a situation. Do you see any difference between that kind of Rule 55 default judgment and a Rule 37 default judgment imposed for deception of the district court and discovery abuses that have destroyed key evidence for the plaintiff? Your Honor, aside from the issue of which rule applied, the issue that the courts addressed in all of the cases that have been cited by both parties is that any default judgment has to be supported by a pleading that would give rise to the liability for which the pleadings addressed. And so, in this case, we argue that whether it's Rule 55 or Rule 37 default, the court determines that all of the allegations in the complaint as stated are true, are to be accepted as true. So, from our point of view, Your Honor, the standard is the same with respect to how do you determine the liability and, consequently, the damages that flow from that. And in this particular case, the only issue on the liability hinged on the oral statement. Are you saying that an oral contract is, or an oral promise to protect trade secrets is unenforceable? Your Honor, the oral, the language of what the oral agreement is, is that you would not provide this to third parties, that you would not provide the trade secrets. Would you please answer my question? Do you agree that an oral contract, an oral agreement to protect trade secrets is enforceable? We do not dispute that, Your Honor. Okay. And we do agree. So, what's the issue? The issue is, what was the oral agreement? And the oral agreement... It's what the plaintiff says it was, given the default judgment, right? The plaintiff said the oral agreement is that you would not provide the trade secrets to third parties. And in this case, there were no, and the decision was based upon the fact that it was provided to third parties. Well, it was a little broader than that. It was, it would not be provided to third parties or used in any manner inconsistent with GMT's business interest. And the only met, the issue, all of the decisions, Your Honor, that was issued against DMZ hinged on the fact that it was actually transferred to another party. And then that party used it in a way, as they argued now on appeal... And that's what's alleged. ...for its personal benefit. And that's what's alleged in the complaint. And that's what's alleged in the complaint. But... So why doesn't that state a claim? It states a claim because the oral agreement does not exclude that DMZ can use the trade secrets. The oral agreement does not exclude that DMZ... Has this been your brief? Yes, Your Honor. We've stated here that on page 13, page 16 of our brief, that the First Amendment complaint alleged that GMT voluntarily supplied its confidential information in good faith to further both companies' economic interests. And with the explicit understanding that DMZ would not provide that information to third parties. Or in any manner inconsistent with GMT's business interests. Yes. The point... And where is the argument that the use of the trade secrets alleged by True Group and by Stark, Sea Markey, doesn't fall within the scope of that agreement? The argument, Your Honor, is that that's the agreement. That's the... It's that the oral agreement limits that these DMZ or its subsidiaries can't give it to third parties. And the other part, or in any manner inconsistent with business interests, the decision in this case hinges upon the transfer of the trade secret. So you read the oral argument as allowing DMZ to exploit Global's trade secrets in competition with Global. Is that right? Your Honor, I think the court is hitting a point that we wanted to reach, which is that... I didn't get that from your brief. I've got to say, I'm just improvising in response to what you're telling us this morning. Well, we have put in a brief, Your Honor, that there's no anti... There's no agreement that you will not compete with us. In any manner inconsistent with GMT's business interest? We also have... Wouldn't competition be a manner adverse to GMT? No, Your Honor, because 25% of DMZ belongs to GMT based upon the complaint. And that was deliberately set up. Mr. Matthews, can I pause this here? Because I'm just having trouble with the whole context of the discussion. To go back to Judge Hamilton's point, one of his questions earlier. This whole dialogue that we're having now, let's set aside who wins, seems to me to be an attempt to appeal the opinion that Judge Dow wrote back in 2014. Now, that's a while ago. But more immediately, what brings us to court is this default judgment for the discovery abuse and the discovery sanction. Okay. And once the case got into the discovery, the 12B6 ruling was in the rear view mirror. And then there was a proceeding to set the amount at $6.6 million. So this just seems pretty far afield from the Rule 55 cases. This case proceeded into discovery. It had the history that it had. And then this default judgment was entered. And now we're trying to rewind the clock and go back to when there's not been any appeal, as best I can tell from that. I understand the court's position on that. But the continuation of the case was based upon Judge Dow's ruling. And that was adopted then by Judge Schall, who then accepted that. Well, are you foreclosed as a matter of law from challenging that on appeal, if you disagree with it? I believe not, Your Honor. We have... But have you? We have raised the issue that the complaint itself... You've done it, though, through the back door of the discovery sanction. You didn't come through the front door and say, hey, look, we got a big issue with the 12B6 ruling. First and foremost, we should have never been in discovery. I understand the court's position on that, but... Well, it's just a question for you to react to. It just seems to me like we're... If we're going to go back and redo the Judge Dow or look at whether Judge Dow got it right or wrong, we're kind of doing that on our own. There's not been an appeal from that. Yeah. If I may move, I understand the court's position on that. I'm not going to dispute it. We also raised the issue of the appropriate Rule 37 because of the 2015 reference to the e-discovery. When did you raise that issue in the district court? Your Honor, we raised that issue... When? In our... We argued that specifically in the... I believe that would have been covered in our motion for summary judgment. Okay. So the question about the amendment to Rule 37E left me also wondering whether you think the deliberate destruction of electronically stored information would, in order to deny access to the plaintiff, would make that an exceptional case under the prior language? We had no analysis of that, factually. Okay. And given the amendment, what did Mr. Dong think that the old Rule 37E allowed him to destroy that the new Rule 37E would not? It's the basis for the ruling and the judgment, Your Honor. What's the difference? What difference makes a difference in light of the record of Mr. Dong's activities in this case? Well, the difference is that it related specifically to how the e-electronic discovery was conducted, and in this case, how it was not available at the time. So did Mr. Dong think that the old Rule 37 allowed him to do what he did? And if so, who advised him of that? Well, that's not exactly what we're saying, Your Honor. We're saying that the court made the determination based upon the new rule without any analysis or examination as to the... So do the analysis of the old rule. Explain to me why what he did was not sanctionable under the old rule. Well, we've mentioned in our brief, Your Honor, that the issue is the reasoning in terms of how the judge got to... How could intentional destruction of electronic discovery not be a violation of the old rule? There was a specific finding of other discovery abuses as well, but there was a specific finding of intentional destruction of electronic discovery, and that was part of the basis of the default judgment under the new Rule 37. But what I think Judge Hamilton is trying to get at, how wouldn't that be a basis for default under old Rule 37, regardless of whether or not the district court addressed it? Tell us, please, how that would not be a violation that could result in default under old Rule 37. Your Honor, my only response to that is the court's analysis... Court aside, I'm not asking you about the district court's analysis or lack of it. I'm asking you to explain to us how that intentional destruction of electronic discovery wouldn't result in default under the old or the new rule. And I don't think you can answer it. I don't disagree with the court, because obviously if there was... Under either rule, it would not have been acceptable, except that there are particular requirements under the new rule. And we believe that that's the standard that was applied, and it may very well be that the district court would have elected some sanction that was not a default under the old rule. Do you want to save the rest of your time for rebuttal? Thank you, Your Honor. Mr. Goodman for plaintiff. May it please the court, Jonathan Goodman for GMT Global Material Technologies. Your Honors, GMT seeks and by any measure is entitled to a ruling confirming that Judge Schott did not abuse his discretion when he entered the Rule 37 default, that he didn't abuse his discretion when he entered the $6.6 million in damages for GMT on its trade secret theft claim, and that he certainly didn't abuse his discretion when he denied the Rule 59 motion. Before we get into the merits, please, if you could address the final judgment question. Certainly. On the counterclaim issue, the district court in his ruling on the default judgment indicated that his prior rulings with respect to the counterclaims still stand, but there was no final judgment order. Certainly. So as we, I think, established in our briefs, we agree with the defendants, frankly, that there is appellate jurisdiction. We get there a little bit differently in the sense that there's three primary reasons. Judge Schott, in entering his judgment in March of 2018, expressly found that his work was done. He entered, it's at page 878 of the record, enter judgment and terminate civil case. And we've cited those authorities in this circuit, the Ananga case and the Hernandez case, that under similar circumstances where there may be an open issue, I think in the Ananga case, there was a motion for summary judgment that was its work in the lower, in the trial proceedings, that that has been found sufficient for the purposes of appellate jurisdiction. How is that consistent, though, with his prior ruling that the rulings on the counterclaims still stand? Because they were not addressed specifically in the final order. That's what the- I think where it comes up, Your Honor, is frankly based, and it's connected to the waiver argument that we made, which is his ruling, Judge Schott's ruling on the 12C motion on DNZ's counterclaim, came out, I want to say, May 1st of 2015. And from that day forward, literally, the defendants raised that issue zero times. But can you waive the question of appellate jurisdiction? That's essentially what you're asking us to find. Yes, you can. And the cases that we've cited, at least in dicta, suggest generally that you can take actions that waive appellate jurisdiction. That's the McMillian case and the Downey versus State Farm case. Is the counterclaim still valid in your view? There's an, I don't know what he styled it, memorandum and opinion and orders. It's still valid, like if whatever happens here, if your adversary calls you up and says, send us a check over on that counterclaim. I would say no. I would say that whatever right that they may have had to challenge the finality of the judgment and to suggest the judgment should be modified to reflect their counterclaim and the ruling on the Rule 12C motion is gone. And is that consistent, though, with that comment that Judge Shah made, that he wasn't trying to wipe out all the prior rulings in the case? Right. But when he made that ruling, he made that ruling in September of 2016. And after he made that ruling, he instructed the parties, okay, damages experts, damages briefings. In all of that, there was, the defendants didn't raise the impact of their ruling on their counterclaim. Was there ever any discussion with respect to offsetting or potentially offsetting the counterclaim amount for the judgment in your favor? Never. Or request? We did not hear one thing about their counterclaim after May of 2015. I mean, and that's exactly right. So you had, not only did you have experts' opinions and damages briefing, then you had a Rule 59 motion explicitly challenging the ruling and seeking to modify the ruling that didn't address the impact of their counterclaim. So we think it's a pretty clear case of waiver, and especially where you have, and I think as your Honor's recognized in the questioning, that nothing in this appeal, including their docketing statement and their briefs, raise any issue regarding their counterclaim. And so I... Suppose hypothetically for a minute, you're not going to like the question, but let me just bear with me here. Suppose hypothetically that the district court was given the opportunity, if it so chose, to modify its judgment, to include the counterclaim. What do you think the likelihood is that your client, in reaction to that, would want to challenge that? Would want to challenge the basis for the counterclaim in the first instance, or raise a jurisdictional issue or something else? Or would you just say, no, that's fine, we'll pay it? No, I think what we would say, if it were remanded to address that issue, is basically expressing what we just argued. Not so much that there was perhaps a substantive problem with his ruling in May of 2015, so much as they had the opportunity in the five or four or five years after that time to raise an issue, and they simply didn't do that. And I think the is that something you would want to bring to this court's attention? If it does go back and you do raise that and it comes out against you, is that something? I think we would. I think we would argue. I mean, it's a few steps away, but I think the argument would be that it shouldn't have been considered because in this circuit, you can, the McMillian case, the Downey case suggested, you can waive all jurisdiction. And what would be the proper procedure for us to follow if we think that the issue of the finality of the counterclaims needs to be addressed by the district court? If you think that it needs to be addressed, I suppose you would remand it for that issue. Just to modify the judgment, or? Well, I guess you could modify the judgment, but there's been no evidence submitted. I mean, there's no evidence submitted in the damages briefing on the point. I mean, that's part of the issue. We don't have any evidence in the record regarding the damages. All we have is the Rule 12c motion that was filed on their counterclaim. So I don't know if you have any other questions on appellate jurisdiction. Thank you. To go take it from the top, so to speak, as we, I think, adequately argued in our brief, the appeal here is really most notable for what is not being appealed. I mean, there is no dispute that, starting in April of 2011, the defendants, including the individual defendant, Dong Joo Min, commenced a campaign to destroy evidence and then to lie to the court. It happened throughout the lawsuit, and none of those issues are challenged. And, of course, when you have misconduct like that, it directly affects the analysis under Rule 37. When you're trying to get out of a Rule 37 default, Domanis and Haslam, the other cases, all confirm that the facts that are alleged in the complaint are true. They cannot challenge their liability. With respect to damages, of course, Judge Shah had even broader latitude because the misconduct here was intended to prevent GMT from proving its damages. And another key issue, so they don't dispute any of their misconduct. They don't appeal Judge Dow's finding that this amended complaint stated a claim for trade secret theft, that we pled enough facts to provide notice. Any reason they couldn't have that you can see? No. Because, I mean, I don't know how you react to the colloquy we had a few minutes ago, but it just seems to me like this is just a backdoor 12b-6 appeal. I agree. I mean, their brief at pages two through four of their opening brief is very specific about all the orders that they're challenging and not challenging. One of the orders that is not challenged is Judge Dow's 2014 ruling. Another key ruling that they're ignoring is Judge Shah's ruling in the summary judgment in the default. I mean, Judge Shah considered extensive Rule 56.1 evidentiary submissions. He found that we had presented, notwithstanding five years of lies and destruction of evidence, he found that GMT had sufficient evidence to be entitled to a trial on the merits on its trade secret theft claim, and that he didn't need to get there because of the discovery of misconduct. And that's ignored in their brief. And so the brief really, their appeal really is two issues. Do we plead facts as to Dong Ju Min, and is there an abuse of discretion on damages? And their argument on the pleading is premised exclusively on questions of fact that can't be suggested. It's a backdoor 12b6, but it wouldn't stand scrutiny on a 12b6 because there are questions about is the information a trade secret? Is there a contract, an oral contract? Is there a duty to not, you know, to maintain the secrecy of the information? Learning curves tells us those are all questions of fact. And at this point, they were on notice of what we had under Rule 37. They can't challenge those facts that are alleged. One of the things that was a little surprising to me in the briefs, Mr. Goodman, was that, was sort of the extent of engagement on the merits, given that this is a Rule 37 default judgment as a sanction, which I thought would not leave much room for debate about the merits. But the Fifth Circuit's opinion in the Nishimatsu construction case, and Circuit Judge Kennedy's opinion for the Ninth Circuit in Danning, both seem to leave at least some room for challenging pleadings, as does the Supreme Court's 19th century decision in Thompson. I'm wondering if you have some thoughts about appropriate limits to that line of cases, and in particular, how we might deal with those in the post-Twombly, post-Iqbal world of civil pleadings. Well, what I would say on the Nishimatsu case, I think is an example of, it's easily distinguished. Based on just the facts of that case. I agree. It doesn't point against you in this case. But what it does do is leave a door open wider than I expected it to be open. For a challenge of this sort to the adequacy of pleadings. And pleadings have, as you know, have become much more the focus of litigation in the last 10 years since Iqbal. Certainly, but I don't think in the Rule 37 context, it's not inappropriate to revisit the pleadings if there is an obvious defect. Like the contract problem in Nishimatsu. In Nishimatsu, you had a contract where they were suing the defendant individually, that he was bound by that contract. And the contract's attached to the complaint, and he doesn't sign it in his individual path. Here you have a fact-based attack on pleadings. And then of course, we had years of discovery when unbeknownst to the defendants. We had a suspicion that they weren't being truthful, and that they weren't producing documents because of the paucity of materials that were produced. And it took us years to uncover the true extent of the deceit that is not in dispute. Could you just summarize briefly for us, Mr. Goodman, the best facts for holding Mr. Dong personally responsible for the discovery abuses and deception in this case? Sure. First of all, there's a comment that I'd like to make, which I think we made in our brief adequately. The notion that Dong Joo-min didn't have noticed that he was being sued personally was never raised prior to the Rule 59. So Sigsborg says that's waived. And he issued discovery. Issued discovery. He filed 312B6 motions, a motion for summary judgment, a affidavit. On behalf of himself. On behalf of all the defendants, including himself. He even said in an affirmative defense that we've cited in our brief that he acknowledged that he was being sued personally. So the notion that he couldn't have brought that argument up before is absurd. And the notion that Dong Joo-min shouldn't be held personally liable here for his absolved from his individual misconduct because he did it as a representative of DNZ, it's not true, first of all. So is your position that all of the misconduct occurred on behalf of all three defendants? Certainly. Certainly. And by the way, Dong Joo-min didn't search his own email. Dong Joo-min, Judge Shah cited, it's page A60 of the record. Judge Shah expressly identified where counsel for Dong Joo-min falsely argued that Dong Joo-min didn't have a relationship with Sea Marquis. He said that on behalf of Dong Joo-min. That was a false statement. It was one of the many issues that led to the default, the lies to the court, in addition to the destruction of evidence. But Dong Joo-min answered discovery. He sat for a deposition. By the way, the second part of that deposition happened December 9th, 2015 when the new rule was in place. He sat for a deposition. He had documents with him, never produced them. He refused to answer my questions. Was he being instructed by his lawyer not to answer or was he refusing on his own or a combination? I can't speak to him being instructed not to answer. I think it was on his own. There's a little bit of an issue since it was a telephonic deposition. He was sitting in Hong Kong with a translator. But he ended up walking out of the deposition. It was a farce. The deposition was a complete and total farce. Was it videotaped too? It was videotaped, yes. It was done through Skype. I would point out, one of the criticisms they have of us in our brief is that we miscited Domanes. They're correct. We actually inadvertently miscited Domanes. What the quote was was from page 37 of their brief. Page 37 of their opening brief says that a default may impose personal liability based on corporate activity. That's a quote from their brief. Even if their theory that somehow he's absolved because he did it in his individual capacity ignores the actual record, but even under their argument, it wouldn't matter. Dom shouldn't be allowed to walk away from his misconduct here. Can I ask you a quick question? Certainly. There's been some back and forth in the briefs about piercing the corporate veil. Is that even necessary or relevant given the tort nature of theft of trade secrets? It's not. That's not what we pled. We allege that he stole our trade secrets personally. I'll just briefly address two last things and certainly answer any other questions. I'd like to address the retroactive application of Rule 37E2C. That argument, despite what we just heard, was never raised prior to April 22nd of 2019. In the reply brief. In the reply brief. That was the very... Judge Shah didn't make a mistake in his ruling when he said that the defendants didn't raise it because they did not raise that issue. But even if they had, of course, easily... I mean, Domanis came out in 2014. That's a Rule 37 default for discovery misconduct. It was known or should have been known to any party that is litigating in this circuit that you can't lie to a court, that you can't destroy evidence. The 2006 version of the rule says you can't sanction someone for the loss or failure to produce ESI if the ESI is lost as a result of routine or good faith operation of an electronic data system. I mean, that is not what happened here. They destroyed their computers. They didn't search emails and then they lied about it for Fortunately, we were able to get enough discovery from third parties to allow us to show what happened. On damages, there's three sentences in the briefs on damages in their briefs. And all they do, they don't do anything other than incorporate by reference their Rule 59 motion. They have never established an error or an abuse of discretion by Judge Shah in his calculation of his broad discretion in this case was wrong. I mean, the rule is that in a Rule 37 default, you're not to disturb damages unless they're plainly excessive. They've made no showing of that at all. Their challenge is limited to purported errors that they identified in the Rule 59 motion. Judge Shah recognized that those errors were all arguments that they either made expressly or could have made before the entry of judgment. So Sigsworth says too late. And all they've done here is incorporate those by reference. So, Mr. Goodman, I just have one technical question. It's not on the point we're raising. I just want to, it's just for purposes of my understanding, going back to this counterclaim issue here. The whole issue in the district court arises out of the litigation on the counterclaim, arises out of the litigation in China, right? That's correct. Okay. If I, looking at the paperwork on the China judgment, the only plaintiff in that action is the company, right? It's Don himself. Mr. Don is not a party to that. Just DNZ. DNZ and GMT are the only two parties in that case. So whatever happens or doesn't happen with the counterclaim, it's not as if he can benefit from that and absolving him of any portion of the... to the trade secret theft claim. Because on 12C, because there was different claims, different parties. Thanks. Thank you, Mr. Goodman. Mr. Matthews, rebuttal. Yes, Your Honor. The minute that I have left. First, on the issue of Don Jumaine's personal liability and searching through the complaint, there is no indication that he acted other than in his corporate capacity. So, suppose I'm a truck driver and I, while on the job, drive too fast and cause an accident. I can be sued as an individual along with my employer, right? That's correct, Your Honor, but... For the tort. For the tort. Right. And that's what we have here, right? The theft of trade secrets. The complaint should allege that he acted in his personal capacity and it did not. What rule of law says that has to be alleged in the complaint? Well, what has to be alleged, Your Honor, is sufficient facts to show that he acted beyond his corporate capacity and that was not alleged in the complaint. My truck driver hypothetical doesn't involve any activity beyond corporate active responsibility or corporate capacity, right? Yes, that's correct, Your Honor, but there is a specific line of cases which definitize that the corporation and its... Dealing with contracts, yes. ...are separate. With contracts, yes. With respect to contracts and with respect to torts, if, in fact, there is evidence to show that he acted outside of the position of... Are you saying a corporate officer who is personally engaged in fraud can't be sued personally for that? I... They didn't allege fraud, but if they did, Your Honor, we have Rule 9, which we discussed in our papers. New Rule 9 has nothing to do with that. I'm just trying to understand what your position is, but I think that discussion may need to come to an end. Is there anything else you want to tell us? No, thank you, Your Honor. Thank you, Mr. Matthews. The case will be taken under advisement.